IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 12-00291-16-CR-W-GAF |
| | ) | |
| ERIC UNION, | ) | |
| | ) | |
| Defendant. | ) | |

ORDER

This matter is currently before the Court on Defendant Union's Motion for Severance of Count Eight of the Second Superseding Indictment and for Separate Trial for Defendant Union (doc #277). For the reasons set forth below, this motion is denied.

I. INTRODUCTION

On May 23, 2013, defendant Eric Union, along with fifteen others, was charged in a ten-count Superseding Indictment. Defendant Union was charged in only Count Eight.

On February 25, 2014, the Grand Jury returned a ten-count Second Superseding Indictment against defendants Andre Taylor, Harlan Taylor, Raymond Taylor, Darryl Taylor, Carl Taylor, Robert Taylor, Daniel Howard, Marlon M. Minton, Tyrone Rock, Allen Sanchez, Rick Schoen, Ruben Machiche, Gregory Johnson, Bryant Willis, Kenneth Vaughn Cooper, Eric Union, William E. Brown, Rahmon Allen, Victor Vickers and Charles E. Williams. Defendant Union is charged in only one count, that is Count Eight. Count Eight of the Second Superseding Indictment provides:

> Between on or about August 14, 2012 and August 21, 2012, in the Western District of Missouri, and elsewhere, **ANDRE TAYLOR, KENNETH**

**VAUGHN COOPER,** and **ERIC UNION,** defendants herein, did knowingly and intentionally combine, conspire, confederate, and agree with each other and others, both known and unknown to the Grand Jury, to travel in interstate commerce from Kansas City, Kansas, to Kansas City, Missouri, with the intent that the murder of Billy Brown be committed, and did use a communication facility to discuss, plan, and arrange said murder, in violation of the laws of the state of Missouri, as consideration for the receipt of, and as consideration for a promise and agreement to pay, things of pecuniary value, to wit: $10,000 in United States currency, contrary to the provisions of Title 18, United States Code, Section 1958.

## Overt Acts

In furtherance of this conspiracy and to effect the objects of it, one or more of the conspirators committed, among others, the following overt acts:

1. On August 14, 2012, FBI agents intercepted a phone call (session #1374) between **Eric Union** and **Andre Taylor**. During this call Taylor mentions having seen "the dude" and wanting to get "dude in the morning shift." **Union** replies that he (**Union**) is going to send him (**Cooper**) your direction." **Taylor** responds, "I don't give a fuck who it is if he [is] serious." Later, agents intercepted a phone call (session #4487) between **Andre Taylor** and **Cooper**. They agree to meet. **Cooper** said, "show me how you wanna do it or let me know exactly how you want to do it."

2. On August 16, 2012, FBI agents intercepted a call between **Cooper** and **Andre Taylor** arranging a meeting. Afterward, FBI surveillance units observed **Cooper** and **Taylor** meet and talk at 1617 North 9th Street, Kansas City, Kansas. On August 17, 2012, FBI agents intercept a phone call (session #4531) between **Andre Taylor** and unknown male. During the call, **Taylor** asks the unknown male if he knows "Billy Brown." **Taylor** described Brown to the unknown male but the unknown male did not know him.

3. On August 18, 2012, FBI agents intercepted a call (session #1970) between **Eric Union** and **Andre Taylor**. During this call, **Taylor** complains about not getting in touch with "dude" (**Cooper**) and says that he (**Taylor**) is about to do "something really silly." **Union** tells **Taylor** not to do that and **Taylor** responds, "it's necessary to kill him."

4. On August 20, 2012, agents intercepted a call (session #4619) between **Andre Taylor** and **Kenneth Cooper**. **Taylor** and **Cooper** discuss

the murder and various weapons that could be used. They discuss activity at the house of the intended victim. **Cooper** said he was "waiting" at the house from 10:30 to 2:20 a.m., on a recent evening. **Cooper** complained that there was too much activity at the house with people going in and out. **Cooper** also said he's trying to get his other "hammer" to "lay on it how [he wants] to." **Cooper** talked about having an AR-15 that fit inside a tennis racquet bag. **Cooper** also said he "doesn't plan on leaving any ballistics." **Taylor** asked **Cooper** to meet him (**Taylor**) on the following day.

5. On August 21, 2012, agents intercepted a phone call (session #4635) between **Cooper** and **Andre Taylor**. During the call **Taylor** told **Cooper** that he (**Taylor**) had [a] "hammer" at "23rd and Hardesty" and **Cooper** said he was going to come and get it. Later, during call (session #4621) **Cooper** told **Andre Taylor** that **Cooper** was outside and **Taylor** told him to walk to the back.

6. On August 21, 2012, at approximately 9:15 p.m., FBI agents notified Jackson County Sheriff's Deputies that **Kenneth Cooper** was riding inside as a the [sic] front seat passenger inside a red GMC Sierra bearing Kansas license plate "131 ELC." FBI agents informed the deputies **Cooper** had several arrest warrants.

7. Thereafter, deputies activated their emergency lights and stopped the vehicle. As deputies made contact with the occupants of the vehicle they could smell the aroma of burnt marijuana coming from inside the vehicle. Furthermore, deputies noticed the driver, later identified as Kevin V. McBride, black male, who lives at 1617 North 9th Street, Kansas City, Kansas, appeared to be nervous and sweating profusely from his forehead. While this was occurring, another deputy contacted the front seat passenger who was later identified as **Kenneth Vaughn Cooper**. A computer check revealed **Cooper** had several active arrest warrants from Jackson County and Lee's Summit, Missouri. Consequently, deputies arrested **Cooper** because of his warrants and deputies then performed a pat-down search of McBride and informed him his vehicle would be searched for contraband because of the marijuana odor.

8. During the ensuing search, deputies recovered a black "Kimber" (firearms manufacturer) case behind the driver's seat. Deputies recovered a MAC-10 style homemade .45 caliber firearm inside the plastic case. Furthermore, deputies recovered one metal stick magazine stamped SPW GL C-153427 with eighteen (18) live rounds of .45 caliber ammunition found inside the case.

3

9. In addition, deputies recovered a Glock, Model 22, .40 caliber S&W semi-automatic handgun, serial number CRP008, from between the center console and the driver's seat. The Glock was found with the slide locked back and no magazine inserted and no ammunition in the chamber. However, a Glock, .40 caliber S&W 15-round magazine containing thirteen (13) live rounds of ammunition was located within the center console area next to the firearm. An additional 10 live rounds of .40 caliber S&W ammunition was located inside the center console area.

(Doc #244 at 5-7)(defendants' aliases omitted) The remaining counts of the Second Superseding Indictment charge various defendants with conspiracy to distribute powder cocaine and marijuana, distribution of powder cocaine, aiding and abetting the distribution of powder cocaine, possession of a machinegun in furtherance of a crime of violence, and possession of ammunition by an unlawful user of a controlled substance.

In the Government's Suggestions in Opposition to Defendant's Motion for Severance, the government set forth the following Factual Summary:

> The thrust of the government's case is that defendants Andre Taylor, Harlan Taylor, Raymond Taylor, Darryl Taylor, Carl Taylor, Robert Taylor, Daniel Howard, Marlon Minton, Tyrone Rock, Allen Sanchez, Rick Schoen, Ruben Machiche, Gregory Johnson, Bryant Willis, William Brown, Rahmon Allen, Victor Vickers and Charles Williams, participated in a cocaine and/or marijuana distribution conspiracy form February 1, 2010, to September 25, 2012. Likewise, the government alleges from August 14, 2012, to August 21, 2012, Andre Taylor, Kenneth Vaughn Cooper and Eric Union conspired to commit murder for hire of William Brown.
>
> The government's evidence will be that Andre Taylor was the leader of a large drug trafficking organization that sold cocaine and marijuana throughout the Kansas City area. William Brown was a trusted member of Andre Taylor's organization during the early part of the conspiracy. In fact, William Brown rented several residences for Andre Taylor. Furthermore, on or around December 31, 2011, to January 1, 2012, William Brown purportedly stole approximately 15 kilos of cocaine and $500,000.00 in U.S. currency from a residence he rented for Andre Taylor. Andre Taylor was in Florida when the theft occurred.

Andre Taylor believed Brown was responsible for this theft, in part, because only William Brown knew that Andre Taylor stored the money and the cocaine inside this particular residence. In addition, only William Brown had access to the unit other than Andre Taylor. Thereafter, Andre Taylor informed Eric Union that he had seen William Brown and wanted to get him. Union responded by telling Andre Taylor that he would send Kenneth Vaughn Cooper, a hit man, to Andre Taylor. Andre Taylor then offered to pay Cooper $10,000 to kill William Brown. On August 18, 2012, Andre Taylor complains to Eric Union about not being able to contact Cooper and voices his frustration by commenting that it's necessary to kill him (i.e. William Brown). However, on August 21, 2012, investigators thwarted this murder plot after intercepting Andre Taylor instructing Cooper to come to his residence located at 2310 Hardesty, Kansas City, Missouri, and pick up a machine gun to use to kill William Brown.

(Doc #290 at 2-3)

## II. DISCUSSION

Defendant Union seeks a severance of both Count Eight of the Second Superseding Indictment and a severance of himself from his co-defendants.

A. Joinder of Offenses

Whether two or more offenses can be joined in a single indictment is governed by Rule 8(a) of the Federal Rules of Criminal Procedure. Rule 8(a) provides:

> (a) **Joinder of Offenses.** The indictment ... may charge a defendant in separate counts with 2 or more offenses if the offenses charged ... are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan.

Fed.R.Crim.P. 8(a).

The joinder of offenses pursuant to Rule 8(a) is proper when: (1) the offenses are of the same or similar character; (2) the offenses are based on the same act or transaction; or (3) the offenses are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan. See United States v. Rodgers, 732 F.2d 625, 629 (8th Cir. 1984). As is evident from the Second Superseding Indictment, Counts One through Seven are based on acts or

transactions connected together or constituting parts of a common scheme or plan, that is the distribution of cocaine and marijuana. Counts Eight through Ten are based on acts or transactions connected together or constituting parts of a common scheme or plan, that is the murder for hire of William Brown.[1] Defendant Andre Taylor is charged with both the drug-related charges and the murder for hire-related charges. Joinder of Counts One through Seven with Counts Eight through Ten is proper in that the offenses are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan. As explained by the government:

> Here, the motivation for the conspiracy to commit murder for hire, charged in Count Eight … is co-defendant William Brown is alleged to have robbed defendant Andre Taylor of approximately $500,000.00 cash and 15 kilos of cocaine. This charge is therefore logically related to the drug conspiracy and all other counts charged in the Second Superseding Indictment.

(Government's Suggestions in Opposition to Defendant's Motion for Severance (doc #290) at 6) The Court finds that Count Eight is properly joined with the other counts of the Second Superseding Indictment.

B. Joinder of Defendants

Rule 8(b), Federal Rules of Criminal Procedure, establishes the requirements for joinder of defendants. Defendants are permitted to be joined where "they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." There is a preference in the federal system for joint trials of defendants who are

---

[1] Count Nine alleges that defendants Andre Taylor and Kenneth Vaughn Cooper possessed a firearm in furtherance of the conspiracy to commit murder for hire, as alleged in Count Eight. As set forth in United States v. Hoang Ai Le, 2002 WL 32103064, *2 (E.D. Cal. Nov. 7, 2002), where a conspiracy charge forms the predicate offense for a firearms charge under 18 U.S.C. § 924(c), the weapons charge is properly joined to the conspiracy count. Accord United States v. Best, 235 F.Supp.2d 923, 928 (N.D. Ind. 2002)("because [the firearms murder charge under 924(j)] incorporates [the drug conspiracy charge] as a predicate offense, the drug-related charges are properly joined with the murder-related charges.")

indicted together. See Zafiro v. United States, 506 U.S. 534, 537 (1993). This is increasingly so when it is charged that defendants have engaged in a conspiracy. See United States v. Pou, 953 F.2d 363, 368 (8th Cir.), cert. denied, 504 U.S. 926 (1992).

The question of whether joinder is proper is to be determined from the face of the indictment, accepting as true the factual allegations in the indictment. See United States v. Massa, 740 F.2d 629, 644 (8th Cir. 1984)(overruled on other grounds), cert. denied, 471 U.S. 1115 (1985). See also United States v. Willis, 940 F.2d 1136, 1138 (8th Cir. 1991), cert. denied, 507 U.S. 971 (1993)("the indictment on its face revealed a proper basis for joinder"); United States v. Jones, 880 F.2d 55, 62 (8th Cir. 1989)("the superseding indictment reveals on its face a proper basis for joinder").

Accepting as true the factual allegations in the Second Superseding Indictment, it is clear that the charge in Count Eight (that between August 14 and August 21, 2012, defendant Union, along with co-defendants Andre Taylor and Kenneth Vaughn Cooper and others, conspired to travel in interstate commerce from Kansas City, Kansas, to Kansas City, Missouri, with the intent that the murder of Billy Brown be committed, and did use a communication facility to discuss, plan, and arrange said murder, in violation of the laws of the state of Missouri, as consideration for the receipt of, and as consideration for a promise and agreement to pay, things of pecuniary value, to wit: $10,000 in United States currency) satisfies the requirement that defendants are alleged to have participated in the same act or in the same series of acts constituting an offense. There is no misjoinder of defendants in this case.

    C.    <u>Defendant Union is Not Prejudiced By the Joinder of Offenses or Defendants</u>

"When defendants are properly joined, there is a strong presumption for their joint trial, as it gives the jury the best perspective on all of the evidence and therefore increases the likelihood of

a correct outcome." United States v. Casteel, 663 F.3d 1013, 1018 (8th Cir. 2011)(quoting United States v. Lewis, 557 F.3d 601, 609 (8th Cir. 2009)). However, Rule 14, Federal Rules of Criminal Procedure, permits severance where joinder would result in unfair prejudice to a defendant. The decision to sever lies in the trial court's discretion. See United States v. Davis, 882 F.2d 1334, 1340 (8th Cir. 1989), cert. denied, 494 U.S. 1027 (1990).

Defendant Union argues that he would be prejudiced by a joint trial. Specifically, defendant states:

> 3. The recent filing of the second superseding indictment jeopardizes the current trial setting of April 28, 2014. Several co-defendants contemplate the filing of motions to continue, and at least two such motions have been filed. Defendant Union has been detained since May of 2013, and may have to suffer pretrial incarceration for an extended period if the court allows counsel for the newly added defendants sufficient time to prepare for trial.
>
> 4. Of the alleged overt acts supporting count eight in the second superseding indictment, Union is mentioned in only two, neither of which constitutes any sort of agreement or assent to a conspiracy to commit murder; on the contrary, Union is quoted in overt act number three as discouraging defendant Taylor from the doing of "something really silly."
>
> 5. The statements of Andre Taylor and Kenneth Cooper, as recited in the allegations of overt acts supporting the charge in count eight, will presumably be admissible against Union at trial as statements made during the conspiracy in furtherance of same. Defendant Union will be precluded from cross-examination of Defendants Taylor and Cooper unless they elect to take the witness stand.
>
> 6. The vast bulk of the evidence necessary to prove the various conspiracies alleged in the second superseding indictment has nothing to do with Union. Union will inevitably suffer prejudice form the very volume and weight of the evidence presented to prove the drug distribution conspiracies, which evidence is unrelated to the charges contained in count eight of the superseding indictment.

(Defendant Union's Motion for Severance of Count Eight of the Second Superseding Indictment and for Separate Trial for Defendant Union (doc #277) at 1-2)

Defendant Union argues that he is mentioned in only two overt acts in Count Eight, neither

of which constitutes any sort of agreement or assent to a conspiracy to commit murder. However, whether the government will be able to prove that defendant Union was part of the alleged conspiracy is an issue for trial. This issue remains whether defendant Union is tried separately or with his co-defendants.

As to statements of co-defendants Andre Taylor and Kenneth Cooper, defendant Union is correct in his assessment that their statements will presumably be admissible against him as statements made by a coconspirator in furtherance of the conspiracy. See United States v. Avila Vargas, 570 F.3d 1004, 1008-09 (8th Cir. 2009). As set forth in Avila Vargas:

> In Bruton v. United States, [391 U.S. 123 (1968),] the Supreme Court held that the admission of a non-testifying defendant's statement that incriminated a co-defendant violated the latter's confrontation clause rights. 391 U.S. at 135-36. Bruton, however, does not preclude the admission of statements by a coconspirator in furtherance of the conspiracy. United States v. Spotted Elk, 548 F.3d 641, 662 (8th Cir. 2008); United States v. Singh, 494 F.3d 653, 658-59 (8th Cir. 2007); see also United States v. Coco, 926 F.2d 759, 761 (8th Cir. 1991). Such statements are generally admissible absent confrontation because they are not testimonial. Spotted Elk, 548 F.3d at 662; Singh, 494 F.3d at 658-59; see also Crawford v. Washington, 541 U.S. 36, 56 (2004)("Most of the hearsay exceptions covered statements that by their nature were not testimonial-for example, business records or statements in furtherance of a conspiracy.") Under Crawford v. Washington, the confrontation clause has no application to out-of-court non-testimonial statements. Whorton v. Bockting, 549 U.S. 406, 420 (2007); Spotted Elk, 548 F.3d at 662; see also Melendez-Diaz v. Mass., --- U.S. ----, 129 S.Ct. 2527, 2539 (2009)("Business and public records are generally admissible absent confrontation not because they qualify under an exception to the hearsay rules, but because ... they are not testimonial.") Garcia's statement identifying Vargas as his source was not testimonial and thus did not implicate Vargas's Sixth Amendment confrontation clause right. We find no Bruton error.

570 F.3d at 1008-09. Thus, any statements made by Andre Taylor and Kenneth Cooper in furtherance of the conspiracy to commit murder for hire were not testimonial and, thus, do not implicate defendant Union's Sixth Amendment right to confrontation.

With respect to defendant Union's argument that the bulk of the evidence necessary to

prove the various conspiracies has nothing to do with him, the Court notes that a defendant is not entitled to severance simply because the evidence against a co-defendant is more weighty than the evidence against him or because evidence admissible against a co-defendant may make his case more difficult to defend. In United States v. Willis, 940 F.2d 1136 (8th Cir. 1991), cert. denied, 507 U.S. 971 (1993), the court found:

> There can be little doubt that the joint trial made it more difficult for Willis [a minor participant charged in only two of thirty-two counts] to defend himself. The evidence clearly revealed that Duke was a major drug dealer with a "far-flung" operation. But difficulty alone is not a reason to reject joinder. A showing of clear prejudice must be made.

Id. at 1139. See also United States v. Pecina, 956 F.2d 186, 188 (8th Cir. 1992); United States v. Davis, 882 F.2d 1334, 1340 (8th Cir. 1989), cert. denied, 494 U.S. 1027 (1990).

Prejudice may occur if the jury is unable to compartmentalize the evidence against each defendant. See Willis, 940 F.2d at 1138. However, this potential problem can normally be resolved through applicable jury instructions. See Pecina, 956 F.2d at 188 ("Disparity in the weight of the evidence as between ... parties does not entitle one to severance ... In addition, the district court gave precautionary instructions advising the jury of the proper use of evidence as related to each defendant and each charge"); United States v. McConnell, 903 F.2d 566, 571 (8th Cir. 1990), cert. denied, 498 U.S. 1106 (1991)("the roles of the individual [defendants] were sufficiently distinct that the jury, aided by the court's instructions, could compartmentalize the evidence against each defendant"); United States v. Jones, 880 F.2d 55, 63 (8th Cir. 1989); United States v. Jackson, 549 F.2d 517, 526 (8th Cir.), cert. denied, 430 U.S. 985 (1977). There is no reason to question that any possible prejudice to defendant Union resulting from evidence presented against other defendants cannot be resolved through precautionary jury instructions.

Finally, defendant Union argues that the recent filing of the Second Superseding

Indictment jeopardizes the current trial setting of April 28, 2014. Defendant Union cites prejudice in that he is detained and that said detention will now be extended if he is not severed from co-defendants who need additional time to prepare for trial. In his reply brief, defendant Union argues that a failure to sever or to grant pretrial release will violate his Sixth Amendment right to speedy trial. The Court first notes, that "[i]t would be unusual to find the Sixth Amendment has been violated when the Speedy Trial Act has not." United States v. Titlbach, 339 F.3d 692, 699 (8th Cir. 2003). Accord United States v. McGhee, 532 F.3d 733, 739 (8th Cir. 2008); United States v. Shepard, 462 F.3d 847, 864 (8th Cir.), cert. denied, 549 U.S. 1099 (2006). Defendant Union has not argued any violation of the Speedy Trial Act.

In evaluating a Sixth Amendment claim for pretrial delay, the Court considers four factors: (1) the length of delay; (2) the reason for delay; (3) whether the defendant asserted the right to a speedy trial; and (4) prejudice to the defendant. See United States v. Jenkins-Watts, 574 F.3d 950, 966 (8th Cir. 2009), cert. denied, 559 U.S. 1019 (2010); United States v. Titlbach, 339 F.3d 692, 699 (8th Cir. 2003). "A delay approaching one year may meet the presumption of prejudicial delay and require the application of the other factors." Jenkins-Watts, 574 F.3d at 966. With respect to the first and second factors, defendant Union initially appeared before this Court on May 28, 2013, and has been in custody since that date. Thus, the delay in trial is approaching one year. However, the delay in trial up until April 28, 2014, has been at the request of the defendants. On June 26, 2013, the undersigned met with the parties to discuss the trial setting of this case. Defendant Union did not object to setting the case for trial in April 2014; but during that conference, counsel for defendant Union[2] did object to an earlier setting in

---

[2] At that time, defendant Union was represented by retained counsel, Gregory Vleisides.

February 2014.  (See Minute Sheet of Status Conference (doc #175) at 2)  A delay in trial beyond the April trial docket is now necessitated as a result of the filing of a Second Superseding Indictment on February 25, 2014, which added four defendants.  The case will be continued to a special trial setting commencing on September 2, 2014, an additional four months.  The Court finds that this additional four-month delay is the result of justifiable circumstances, specifically that four defendants have been joined for trial who need time to prepare their defense.  Counsel for defendant William Brown, one of the newly added defendants, has filed a motion for continuance.  In that motion, defendant Brown's counsel states that counsel for fifteen of the seventeen appearing co-defendants do not oppose a continuance of the trial setting.  With respect to the third factor, defendant Union has for the first time, through the filing of the instant motion, asserted his right to a speedy trial.$^3$  Finally, with respect to the fourth factor, defendant asserts that his pretrial detention has caused him prejudice.  However, if defendant Union were to be released from custody, he would apparently concede any argument that he be severed from his co-defendants and proceed to trial on the April trial docket.  (See Defendant Union's Suggestions in Reply (doc #292) at 2)("There are remedies available to the court for the situation presented.  The court should either allow Union to go to trial on April 28, 2014, or it should grant him pretrial release.")  Defendant Union has not argued that there is a risk that the passage of time will impair his defense.  See United States v. Shepard, 462 F.3d 847, 864 (8th Cir. 2006)(no Sixth Amendment speedy trial violation where defendant did not allege that his defense

---

[3] The Court notes that in October 2013, defendant Union's counsel filed a Motion to Extend the Time for the Filing of Pretrial Motions (doc #218), seeking an extension of time until November 23, 2013.  In that motion, counsel states that defendant has been personally consulted and advised of his rights under the Speedy Trial Act and that "[t]he ends of justice served by the granting of this motion outweigh the interests of Defendant and the public in a speedy trial."  (Doc #218 at 1-2)

was impaired by the delay, but rather alleged that oppressive pretrial incarceration kept him from seeing his children and caused him anxiety). Considering the factors set out above, the Court finds that defendant Union's constitutional right to a speedy trial has not been violated.

While the Court is sensitive to the fact that defendant Union has been before the Court for an extended time, the Court finds that the burden and costs of separate trials outweigh any possible prejudice resulting from a further delay brought on by the filing of the Second Superseding Indictment with its additional defendants. The Court will make every effort to ensure that the trial of this case occurs as soon as is practicable and in accord with the Speedy Trial Act.

### III. CONCLUSION

Rules 8 and 14 are designed to promote judicial economy and efficiency and to avoid a multiplicity of trials as long as these objectives can be achieved without substantial prejudice to the right of the defendant to a fair trial. See Zafiro v. United States, 506 U.S. 534, 540 (1993). Given the Court's findings that Count Eight is properly joined with the other counts of the Second Superseding Indictment, that defendant Union is properly joined with his co-defendants, and that defendant Union's claims of prejudice must fail, it is

ORDERED that Defendant Union's Motion for Severance of Count Eight of the Second Superseding Indictment and for Separate Trial for Defendant Union (doc #277) is denied.

/s/ Sarah W. Hays
SARAH W. HAYS
UNITED STATES MAGISTRATE JUDGE